IN THE FEDERAL COURT FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

George D. McCarley
           Plaintiff

vs

City of Roanoke, a Municipal Corporation; Penny Holloway, individually and as Clerk of Municipal Court of the City of Roanoke; Ellen Farmer, individually and as City Manager of the City of Roanoke; Oliver Kitchens[1], individually and as both Prosecutor and Municipal Attorney for the City of Roanoke; Sanford Holliday[2], individually and as Judge of Municipal Court of the City of Roanoke; Henry Bonner, individually and as Mayor of the City of Roanoke; and Alabama Attorney General Troy King for the State of Alabama; and; other individuals and entities to be named following discovery;
                      Defendants (§1983 & 1985)

And;

Carol Knox, individually and as Examiner, Alabama Department of Revenue; James Griggs, individually and as Hearing Officer, Alabama Department of Revenue; Sylvester Cannon, individually and as Individual and Corporate Tax Division, Alabama Department of Revenue; Cynthia Underwood, individually and as Assistant Commissioner, Alabama Department of Revenue; G. Thomas Surtees, individually and as Commissioner, Alabama Department of Revenue; State of Alabama Department of Revenue; Pat Truitt, individually and as Clerk of City of Roanoke; Charles Clack, a resident of Roanoke individually and as poll worker of City of Roanoke; Betty Ziglar, individually and as former Mayor of City of Roanoke. Co-conspirators & Defendants (§1985)

Case No.

3:06cv663-MHT

Jury Trial Demanded

_____

[1] USCA §1985 Note 168: Prosecutor and Attorney held liable if acting under color of state law;  White v. Bloom C.A.Mo. 1980, 621 F. 2d 276
[2] 15 Am Jur Trials (15:629 §34)  Citing Pierson V. Ray (1967)386 US 547, 18 L. Ed 2d 288, 87 S Ct. 1213.  Footnote 1 §34 " However, if Counsel has a case in which the facts clearly show a conspiracy, . . . he may wish to join the judge as a party defendant, this route having been left open in the majority opinion in Pierson.

1

**INTRODUCTION to COMPLAINT ONE**

1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to plaintiff by First and Fourteenth Amendments to Constitution of the United States (R.S. 1979, 42 USC §1983 [and §1985]) and arising under law and statutes of State of Alabama.

Defendants named above, and each of them, is charged with violation of both 42 USC §1983 and 42 USC §1985. Co-conspirator's named above are charged with violation of 42 USC §1985. Unindicted co-conspirators are to be named.

Plaintiff seeks to certify a Class regarding defendant's violation of 42 USC 1983.

**JURISDICTION**

2. Jurisdiction of this court is invoked under 28 USC §1343 (3), being an action authorized by law to redress the deprivation under color of state law, statute ordinance, regulation, custom and usage of a right, privilege and immunity secured to plaintiff by the First and Fourteenth Amendments to the Constitution of the United States.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum or value of ten thousand dollars ($ 10,000) 28 USC §1331.

4. During all times mentioned in complaint one, plaintiff, and each of them (Defendants), were, and still are, citizens of the United States, and they resided, and now reside, in or near City of Roanoke, County of Randolph, State of Alabama. Each of them is of full age.

5. At all times mentioned in complaint one, defendants Penny, Holloway, Ellen Farmer, Oliver Kitchens, Sanford Holliday, Henry Bonner, were the duly appointed, employed (or elected) and presently acting officer(s) of the city of Roanoke.

6.    At  all  times  material  to  complaint  one,  defendants  were
employed,  appointed  (or  elected)  as  officers  of  the  City  of  Roanoke,  or
State  of  Alabama,  and  were  acting  under  color  of  their  official  capacity,
and  their  acts  were  performed  under  color  of  statutes  and  ordinances  of
the  City  of  Roanoke,  State  of  Alabama,  or,  statutes  of  the  State  of
Alabama.    Defendants  were  the  servants,  agents,  and  employees  of  their
codefendndant,  City  of  Roanoke,  so  that  their  acts  are  imputed  to  City  of
Roanoke;  and  defendants  acts  were  under  color  of  law  of  State  of  Alabama.

7.    During  all  times  mentioned  in  complaint  one,  defendants  and  Co-
Conspirators  were  acting  pursuant  to  orders  and  directives  from  superior
defendants,  and  what  they  believed  to  be  the  legal  statutes  of  the  City
of  Roanoke  and  of  the  State  of  Alabama.

8.    At  all  times  mentioned  here  (defendant)  City  of  Roanoke  was  a
municipal  corporation  of  the  State  of  Alabama,  organized  under  the  laws
of  the  State  of  Alabama;  and  the  City  of  Roanoke  provided  each  of  the
individual  defendants  official  titles,  official  workspace,  and  facilities
for  the  conduct  of  their  alleged  activities.    The  City  of  Roanoke  is  the
municipal  corporation  in  whose  name  the  individual  defendants,  and  each
of  them,  performed  all  acts  and  omissions  alleged  here.

The  City  of  Roanoke,  State  of  Alabama  was  incorporated  under  the
laws  of  the  State  of  Alabama  with  authority  to  sue  and  be  sued  in  its
corporate  name  and  it  waived  any  governmental  immunity  from  lawsuits  and
gave  consent  to  be  sued  by  procuring  and  maintaining  in  force  a
comprehensive  liability  insurance  policy  being  policy # 0090256045082 of
the  ALABAMA  MUNICIPAL  INSURANCE  CORPORATION  (AMIC),  a  division  of  The
Alabama  Association  of  Municipalities,  effective  from  January  2006  to
January  2007.    This  policy  provides  coverage  for  Police  liability,  and,
Municipal  Officer  Errors  and  Ommissions.

The State of Alabama was incorporated under the laws of The Alabama Constitution of 1901 and the Alabama Code of 1975 with authority to sue and be sued in its corporate name. Following many telephone calls to the Attorney General office, plaintiff has been unable to determine the presence of insured liability of State of Alabama regarding Lawsuits.

9. During all times mentioned herein, the individual defendants and co-conspirators, and each of them, separately and in concert, acted under color and pretense of law, to wit, under color of the statutes, ordinances, regulations, customs and usages of the State of Alabama and the County of Randolph and the City of Roanoke. Each of the individual defendants and co-conspirators here, plus other persons unknown to plaintiff, separately and in concert, engaged in the illegal conduct here mentioned to the injury of plaintiff(s) and deprived plaintiff(s) of the right, privileges, and immunities secured to plaintiff(s) by the First and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

10a. The Roanoke Municipal Court and its individual members, (defendants herein) who are agents and employees of defendants Roanoke Municipal Court, and City of Roanoke, together with persons unknown to plaintiff, acting under color of law, have subjected plaintiffs and other persons to a pattern of conduct consisting of:

    a. denial of due process rights; and,
    b. deprival of liberty in violation of due process; and,
    c. Improper Seizure; and,
    d. Improper warrant issuance; and,
    e. Abuse of Judicial authority; and,
    f. Inconsistent application of State and Federal law; and,
    g. ordering arrests for minor offenseS, exceeding authority; and,
    h. use of inhuman court calendar scheduling tactics; and,
    i. refusing trial continuance for serious medical distress; and,
    j. refusing trial continuance for serious family emergency; and,
    k. operating city court for revenue generation and not justice; and,
    l. denial of right for counter-charge warrants; and,
    m. acting in absence of judge or prosecutor; and,
    n. insists all cases appear before Judge to generate revenue; and,
    o. issued warrants on unsupported testimony of conflicted witnesses;

4

in denial of rights, privileges and immunities guaranteed plaintiffs and other citizens under the Constitution of the United States.

10b.    This systematic pattern of conduct consists of a large number of individual acts of unconstitutional deprival of liberty via improper, uncalledfor arrest ordered by and visited on plaintiffs and other citizens by members of the Roanoke Municipal Court, and agents and employees of City of Roanoke acting in concert with or under the superior orders of persons unknown to plaintiffs, and under color of law.  These acts of illegal arrest, while carried out under color of law, have no justification or excuse in law, and are instead, gratuitous, illegal, improper, and unrelated to any activity in which City Court may appropriately and legally engage in the course of protecting persons or property, or ensuring civil order.

10c.    Despite the fact that they knew or should have known of the fact that this pattern of conduct was being carried out by their agents and employees, the City of Roanoke, the Roanoke Municipal Court, State of Alabama and other defendants, have taken no step or effort to order a halt to this course of conduct, to make redress to these plaintiffs or other citizens injured thereby, or to take any disciplinary action whatever against any of their employees or agents; and defendants have in fact praised and commended their agents and employees, such praise having the effect of encouraging their agents and employees to continue this pattern of conduct.  In fact, City of Roanoke is planning Grand Opening for a new Courthouse and expanded Jail complex; therefore it is important that the behavior of the defendants, and all of them, be modified now.

**FACTUAL ALLEGATIONS: CITY AND STATE VIOLATION OF ALABAMA CODE OF 1975; CITY AND STATE VIOLATE US CONSTITUTION DUE PROCESS CLAUSE[3]**

11.  Roanoke Municipal Court is governed by statute(s) found in Alabama Code of 1975, Title 12 Chapter 14.  Al Code §12-14-1 authorizes Municipal courts jurisdiction only for violation of municipal ordinances. There is no municipal ordinance involved in the McCarley arrest. Further, and according to Al Code §12-14-6, Jury trial is not authorized for municipal courts.  In both respects, Roanoke Municipal Court and each of them (defendants) has grossly exceeded authority granted by the State of Alabama, in their act of making the McCarley arrest.  State of Alabama failure to authorize Jury Trials in Municipalities fully prevents the Founding Fathers intent for Due Process, and fully violates both The Alabama Constitution and Constitution of the United States.

12. Neither the Judge, nor the Court, nor the city is authorized to make arrests as in the case of the Plaintiff arrest.  While police are statutorily and morally obligated to make arrests in cases of violent offenders or others presenting a clear danger to innocent people and property, such cases would and should be prosecuted by a District Attorney in either Alabama District or Circuit Court.  Municipal Court is not authorized to be involved in such cases.  Therefore the Municipal Court, the Judge, and the City of Roanoke and each defendant violate Alabama law via prosecution of any arrest case.

13.  The Judge, Roanoke Municipal Court, and City of Roanoke have abused authority with regard to fines and bonding.  Because arrest has not been authorized by Alabama Code; Judge, Court, and City are guilty of abuse of authority by ordering individuals be bonded or arrested.

---

[3] See attached and unanimous  Constitutional Convention notes to Quebec

14. State of Alabama has written into law, statues that clearly violate the Due Process Clause of the United States Constitution. As indicated in paragraph 11, Al Code §12-14-6 denies municipal courts empaneling of juries. Then in Al Code §12-14-32, State of Alabama Code has authorized only Judges to make arrests. A dire constitutional conflict is presented by these contradictory statutes. Irregardless of a theory of "Founders Original Intent" or "Strict Construction", this contradiction clearly violates the Due Process clause. If no jury is authorized, then the Judge assumes powers not granted and fully prohibited by the US Constitution, thus in full and complete violation of the United States Constitution. Therefore, State of Alabama has written legislation in violation of US Constitution, Roanoke Municipal Court has utilized those statutes in full violation of US Constitution, Municipal Court Judge has violated his schooling, his Oath, and his moral obligation to uphold US Constitution, and The City of Roanoke has fully encouraged the Judge and Court to violate US Constituion.

15. State of Alabama further violated the Due Process clause and, continues to violate Al Code by failing to "police" Municipal Courts. Al Code §12-14-16 requires Municipalities to report procedures of municipal courts, and, same are required to report Uniform Crime Statistics. State of Alabama has had and continues to have ample opportunity to order City of Roanoke Municipal Court to Cease unconstitutional illegal activities. Because State of Alabama has failed, they continue to violate US Constitution, and Alabama Code of 1975.

16. Every arrest executed by Roanoke Municipal Court since enactment of Ala. Code of 1975 has been illegal. Every arrest ordered by Roanoke Municipal Court since enactment of the Alabama Code of 1975 has

been in full violation of the United States Constitution.  Every arrest since 1975 has violated citizens constitutional and civil rights.

**FACTUAL ALLEGATIONS -- UNLAWFUL ARREST OR DENTENTION**

17.   Plaintiff was experiencing a problem of over one year with an out-of-town Realtor.  The Realtor had sold a property in which Plaintiff had recorded a perfected Lien.  After ignoring the valid encumbrance and selling the property, although being served the lien, Realtor continued to attempt to sell the property again.  Roanoke Police officers had informed the Realtor he should leave the property alone until the lawyers and/or courts could settle the issue.  The Realtor ignored Roanoke police warnings and continued to attempt the sale.  McCarley had complained to the Corporate headquarters of REMAX regarding this affront.

On the morning of the arrest, McCarley informed Realtor he had been reported to both the Georgia Real Estate Commission and the Alabama Real Estate Commission.  Realtor proceeded to Roanoke Police headquarters and first contacted the Randolph County Sheriff who chose not to take action. Realtor then went to Roanoke City Hall and swore a warrant, accepted by Roanoke Municipal Court  and Clerk Penny Holloway.

18.   At the conclusion of the events described (above) the defendants named in paragraph five(5) caused plaintiff McCarley to be carried in a Police Cruiser to the Roanoke Police Station and Jail located at 138 Chestnut Street, City of Roanoke, State of Alabama, and caused him to be there imprisoned.

19.   On his arrival at the said Roanoke Police Station at or about 12:40pm, plaintiff McCarley was "booked" fingerprinted, mugshot, and then placed in a locked and barred jail cell there and was imprisoned approximately 2 hours.  Said arrest was supervised by Lt. Don Truitt, husband of co-conspirator Pat Truitt.

20. Throughout the 2 hour imprisonment, plaintiff:

a. Was never brought before a Judge, Court, or Magistrate; and,
b. was not informed of his right to an attorney; and,
c. was not given required warning that any statement he made
    could be used against him in a court of law; and,
d. Was not informed of privilege against self incrimination; and,
e. was not informed of any formal charges that were to be placed
    against him by defendants, or by other person or persons.

Instead, plaintiff McCarley was detained and imprisoned as a result of the orders of the individual defendants and all of them on the purported justification that a valid warrant had been sworn and issued. This imprisonment of plaintiff was caused to be committed by the individual defendants, and all of them.

21.   Throughout some or all of the period of plaintiff's imprisonment (on orders of defendants), the Municipal Court Judge was available for session in the City of Roanoke.

22.   At the conclusion of the 2 hour imprisonment, plaintiff McCarley was released from custody by defendant following plaintiff act of posting bond, and bond was posted in spite of the illegal charges, warrants, and arrest of plaintiff.

**ALLEGATIONS AS TO DENIAL OF CIVIL RIGHTS**[4]

23.   Each of the individual defendants, separately and in concert, acted outside the scope of his jurisdiction and without authorization of law, and each of the individual defendants, separately and in concert defied the moral precepts built into the United States Constitution and the professional licensure precepts of the Alabama State Bar; and each of the individual defendants, separately and in concert, acted willfully,

---

[4] See PubLaw 90-284, 90th Cong, HR 2516, 82 Stat 73.

knowingly, and purposefully with the specific intent[5] to deprive plaintiff of his right to:

> Obtain arrest warrant for wrongs against plaintiff; and,
> Petition the government for redress of grievances; and,
> Freedom from illegal seizure of his person, papers and effects; and,
> Freedom from unlawful arrest; and,
> Freedom from illegal detention/ and imprisonment; and,
> Release on own recognizance or reasonable bail; and,
> The timely and effective assistance and advice of counsel; and,
> A fair trial; and,
> Vote or run for office; and,
> Participate in or enjoy services of federal or state agencies; and
> Enroll in or attend any school; and,
> Enjoy facilities or establishments in interstate commerce; and,
> Life, Liberty, and the pursuit of happiness; and,
> Due Process of Law, and Trial by Jury.

All of these rights are secured to plaintiff by the provisions of the First Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 United States Code Section 1983 and Section 1985, and by Title 18 United States Code Section 245 (1968).

**ALLEGATIONS AS TO DAMAGES**

24.  As a direct and proximate result of the aforesaid acts of the individual defendants, and each of them, plaintiff suffered great bodily pain, injury and mental anguish, from then until now, and will continue so to suffer in future; and he has lost and will in future lose large sums of money by reason of being greatly humiliated and held up to public scorn and derision as a result of foregoing acts of the defendants. Plaintiff will continue to be affected by and suffer losses from:

> Damage to 4 generations of family reputation in Randolph
>   County; and,
> Damage to personal reputation; and,
> Damage to 30 years of Professional reputation; and,
> Damage to 20 years of Political aspirations; and,
> Loss of property; and,

---

[5] Am Jur Trials 15:649 Footnote 13:  It is not necessary to plead specific intent .
. . to state federal claim under §1983; Monroe v Pape (1961) 365 US 167, 5 L Ed 2d
492, 81 S Ct 473

```
             Loss of professional job opportunity; and,
             Loss and substantial injury to Professional income; and,
             Slander; and,
             Loss of Freedom.
```

Complaint Two provides detail of the political accomplishments of Plaintiff. Such accomplishments, along with an ongoing Corporate Turnaround business boasting 14 successful turnarounds, absolutely demand that such an individual have a publicly searchable record free of the blemish of charges just such as City of Roanoke has now illegally imposed. Therefore, and owing to the due process denial and civil rights violations imposed on McCarley, defendants have imposed a giant roadblock to the ongoing career of plaintiff. In this era in which eighty percent of corporate employers openly advise that thorough background checks will be conducted prior to interviews and employment, such actions as imposed by City of Roanoke are a near death sentence. It is the Due Process denied by City of Roanoke that has created this situation of misery. The true impact on professionals arrested in such frivolous manner can only be likened to the City Roanoke committing felony on plaintiff.

Wherefore plaintiff demands judgment against the defendants and each of them, jointly and severally, in the amount of five thousand ($5000) for each defendant and he further demands punitive damages against the defendants, and each of them, jointly and severally, in the amount of five thousand ($5000) for each defendant.

(a) For judgment against City of Roanoke, a municipal corporation of the State of Alabama, for an additional sum in the amount of any judgment that may be rendered against the defendants Henry Bonner, Sanford Holliday, Oliver Kitchens, Ellen Farmer, and Penny Holloway, under the first claim of this complaint; in the amount of Fifty thousand ($50,000).

(b) For a joint and several judgment against the City of Roanoke, a municipal corporation in the State of Alabama, and the defendants, Henry

Bonner, Sanford Holliday, Oliver Kitchens, Ellen Farmer, and Penny Holloway, in the amount of Fifty Thousand ($ 50,000) dollars, net of expenses and costs.

(c)    For judgment against the State of Alabama, for a sum in the amount of One Hundred Thousand ($100,000), plus the cost of this action; and he further demands such other relief as to this Court seems just, proper, and equitable.

25.    On or prior to 30 June, 2006 in the City of Roanoke, State of Alabama, the individual defendants, and each of them, in violation of 42 United States Code §1983 did with other person or persons whose names are presently unknown to plaintiffs, for the purpose of hindering, impeding, obstructing, or defeating the due course of justice in the State of Alabama, and with intent to deny to plaintiff McCarley the Civil Rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States (R.S. 1979, 42 USC §1983 ) and arising under the law and statutes of the State of Alabama. because of plaintiff's personal convictions, free speech actions, and to injure plaintiff McCarley for lawfully attempting to obtain his right under the Constitution and laws of the United States to the equal protection of the laws.

26.    In furtherance of the object of said Civil Rights Violation(s), one or more defendants did do or cause to be done the acts set forth in paragraphs 1-25 of the first claim in this complaint and, in violation of Title 42 United States Code §1983  (denial of civil rights), did thereby injure plaintiff McCarley in his person and deprive him of having and exercising his rights and privileges under the Constitution and laws of the United States and the Constitution and laws of the State of Alabama, as set forth in Paragraph(s) 20-25 of the first claim in this complaint.

Wherefore plaintiff McCarley claims damages in the amount of Two Hundred Forty Thousand dollars ($200,000) against the defendants, jointly and severally, and costs.

## ALLEGING CONSPIRACY IN VIOLATION OF 42 USC §1985

27.    Plaintiff McCarley realleges paragraphs 1-25 of first claim, beginning at paragraph 29, with additional allegations of conspiracy, to include overt acts and pattern of conspiracy.    An additional State of Alabama agency is now named as Co-Conspirator.

28.    THIS PARAGRAPH REDACTED PENDING COURT APPROVAL AND NOT COPIED FOR GENERAL DISTRIBUTION.    Plaintiff petitions this Court to allow introduction of certain issues under seal so that this Court may consider impact of sealed issues for discovery examination.    The seals may be verified by ongoing police investigation, including; 1) unsolved Tuscaloosa murder, 2) ongoing drug ring investigation, 3) FBI investigation of Mafia corruption of voting machine sales, 4)recent death of plaintiff friend almost on 10 year anniversary of Tuscaloosa murder. While plaintiff does not expect defendants or co-conspirator's are directly involved in other criminal activity, the details of these sealed issues could easily provide key clues to benefit ongoing investigations and likely interface the conspiracy herein, given proper discovery.

## INTRODUCTION to Complaint Two

29.    This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to plaintiff by the First and Fourteenth Amendments to the Constitution of the United States (R.S. 1979, 42 USC §1983 and §1985) and arising under law and statutes of State of Alabama.

Defendants named above, and each of them, is charged with violation of 42 USC §1983 and 42 USC §1985.  Co-conspirator's named above, and each of them, are charged with violation of 42 USC §1985. Unindicted co-conspirators are to be named.

## JURISDICTION

30.    Jurisdiction of this court is invoked under 28 USC §1343 (3), being an action authorized by law to redress the deprivation under color of state law, statute ordinance, regulation, custom and usage of a right,

privilege and immunity secured to plaintiff by the First and Fourteenth Amendments to the Constitution of the United States.

31. The matter in controversy exceeds, exclusive of interest and costs, the sum or value of ten thousand dollars ($ 10,000) 28 USC §1331.

32. During all times mentioned in complaint two, plaintiff, and each of them (Defendants), were, and they still are, citizens of the United States, and resided, and now reside, in or near City of Roanoke, County of Randolph, State of Alabama. Each of them is of full age.

During all times mentioned in this complaint, Co-Conspirator's were and still are, citizens of the United States residing in Randolph County, or, the state of Alabama, and some are employed, appointed, or elected to Alabama Department of Revenue. Each is of full age.

33. At all times mentioned, defendants Penny, Holloway, Ellen Farmer, Oliver Kitchens, Sanford Holliday, were duly appointed (or elected) or employed and presently acting officer(s) of the city of Roanoke. Henry Bonner was not involved in the conspiracy until appointment to City Utilities Board in 1996, and he has been duly appointed and elected and acting officer of City of Roanoke since 1996.

Defendant Troy King for State of Alabama, became Attorney General by appointment in year 2000, replacing former Attorney General Bill Pryor, and Bill Pryor was Attorney General during balance of this conspiracy.

At times mentioned herein, co-conspirator's and former Mayor Betty Ziglar was the duly elected and previously acting Mayor of the City of Roanoke; Pat Truitt, at all times mentioned herein is a Clerk of the City of Roanoke; and, Charles Clack was appointed as City Poll Official.

At all times mentioned here since 2005, Co-conspirator's Carol Knox, James Griggs, Sylvester Cannon, Underwood, and, G. Thomas Surtees were

the duly appointed and presently acting or employed, appointed, or elected officers of the Alabama Department of Revenue, State of Alabama.

34.    At all times material to this complaint, defendants were employed, appointed (or elected) as officers of the City of Roanoke, State of Alabama, and were acting under color of their official capacity, and their acts were performed under color of statutes and ordinances of the City of Roanoke, State of Alabama, or, statutes of the State of Alabama.    Defendants were the servants, agents, and employees of their co-defendndant, the City of Roanoke, so that their acts are imputed to the City of Roanoke; and further, defendants acts were under color of law of the State of Alabama.

At all times material to this complaint, Co-conspirator's were employed-elected-or appointed as officers of the Alabama Department of Revenue, State of Alabama; or, were duly employed, elected, or appointed and acting officers for functions of The City of Roanoke and were acting under color of their official capacity, and their acts were performed under color of statutes of the State of Alabama.    Department of Revenue Co-Conspirators were the servants, agents, and employees of their codefendant, the State of Alabama and Alabama Department of Revenue, so that their acts are imputed to the State of Alabama; and further, Co-conspirators acts were under color of law of the State of Alabama.

Roanoke based Co-Conspirators were the servants, agents, and employees of co-defendant, The City of Roanoke, the State of Alabama, so that their acts are imputed to City of Roanoke and State of Alabama; and further, Co-conspirators acts were under color of law of the State of Alabama.

35. During all times mentioned here, defendants and Co-Conspirators were acting pursuant to orders and directives from superior defendants, legal statutes of City of Roanoke and legal statutes of State of Alabama.

36. At all times mentioned here (defendant) City of Roanoke was a municipal corporation of the State of Alabama, organized under the laws of the State of Alabama; and the City of Roanoke provided each of the individual defendants official titles, official workspace, and facilities for the conduct of their alleged activities.  The City of Roanoke is the municipal corporation in whose name the individual defendants, and each of them, performed all acts and omissions alleged here.

At all times mentioned here, Co-conspirator's and defendant State of Alabama and Alabama Department of Revenue was a governmental entity organized under laws of the State of Alabama and The Alabama Constitution of 1901 and Alabama Code of 1975; and State of Alabama provided each of the individual co-conspirator's official titles, official workspace, and facilities for the conduct of their alleged activities.  State of Alabama is the governmental entity in whose name the individual co-conspirator's, and each of them, performed all acts and omissions alleged here.

The City of Roanoke, State of Alabama was incorporated under the laws of the State of Alabama with authority to sue and be sued in its corporate name and it waived any governmental immunity from lawsuits and gave consent to be sued by procuring and maintaining in force a comprehensive liability insurance policy being policy # 009056045082 of the ALABAMA MUNICIPAL INSURANCE CORPORATION (AMIC), a division of The Alabama Association of Municipalities , effective from January 2006 to January 2007. This policy provides coverage for Police liability, and, Municipal Officer Errors and Ommissions.

The State of Alabama was incorporated under the laws of The Alabama Constitution of 1901 and the Alabama Code of 1975 with authority to sue and be sued.    Following many telephone calls to the Attorney General office, plaintiff has been unable to determine the presence of any insured liability of State of Alabama with regard to Lawsuits.

37.    During all times mentioned herein, the individual defendants and co-conspirators, and each of them, separately and in concert, acted under color and pretense of law, to wit, under color the statutes, ordinances, regulations, customs and usages of the State of Alabama and the County of Randolph and the City of Roanoke.    Each of the individual defendants and co-conspirators here, separately and in concert, conspired to engage in the illegal conduct here mentioned to the injury of plaintiff(s) and conspired to deprive plaintiff(s) of the right, privileges, and immunities secured to plaintiff(s) by the First and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

38a.    The Roanoke Municipal Court and its individual members, (defendants herein) who are agents and employees of defendants Roanoke Municipal Court, and City of Roanoke, plus co-conspirator's together with persons unknown to plaintiff, acting under color of law, have conspired to subject plaintiffs to a pattern of conduct consisting of:

    a. denial of due process rights; and,
    b. deprival of liberty in violation of due process; and,
    c. Improper Seizure; and,
    d. Improper warrant issuance; and,
    e. Abuse of Judicial authority; and,
    f. Inconsistent application of State and Federal law; and,
    g. ordering arrests for minor offenses exceeding authority; and,
    h. use of inhuman court calendar scheduling tactics; and,
    i. refusing trial continuance for serious medical distress; and,
    j. refusing trial continuance for serious family emergency; and,
    l. operating city court for revenue generation and not justice; and,
    l. denial of right for counter-charge warrants; and,
    m. passing judgment in absence of judge or prosecutor; and,
    n. insists all cases appear before Judge, to generate revenue; and,
    o. issued warrants on unsupported testimony of conflicted witnesses;

17

in a conspiracy to deny rights, privileges and immunities guaranteed plaintiffs and other citizens by Constitution of the United States.

38b.   This systematic pattern of conspiratorial conduct consists of a number of individual acts of unconstitutional deprival of liberty via improper, uncalledfor arrest ordered by and visited on plaintiffs and other citizens by members of the Roanoke Municipal Court, and agents and employees of City of Roanoke acting in concert with or under the superior orders of persons unknown to plaintiffs, and under color of law.  These acts of conspiracy, while carried out under color of law, have no justification or excuse in law, and are instead, gratuitous, illegal, improper, and unrelated to any activity in which City Court may appropriately and legally engage in the course of protecting persons or property, or ensuring civil order.

38c.   Despite the fact that they knew or should have known of that this pattern of conspiratorial conduct was being carried out by their agents and employees, the City of Roanoke, the Roanoke Municipal Court, The State of Alabama and other defendants and co-conspirator's have taken no step or effort to order a halt to this course of conduct, to make redress to these plaintiffs or other citizens injured thereby, or to take any disciplinary action whatever against any of their employees or agents and defendants and co-conspirator's have in fact praised and commended their agents and employees, such praise having the effect of encouraging their agents and employees to continue this pattern of conduct.

38d.   In addition to subparagraphs above, said conspiracy and intimidation tactics of State of Alabama Department of Revenue have joined with defendants tactics, and each of them, clearly designed to interfere with plaintiff exercise of rights in paragraph 37, plus:
Right and Freedom of Free Speech; and,

18

Right and Freedom to participate in elections process; and,
Conspired to coerce plaintiff away from political activity; and,
Inject duress/emotional response by notification at death of friend; and,
Conspiring to prevent compliance of plaintiff in Holliday season.

**FACTUAL ALLEGATIONS: CITY/STATE CONSPIRE TO VIOLATE ALABAMA CODE OF 1975; CITY AND STATE CONSPIRE TO VIOLATE US CONSTITUTION DUE PROCESS CLAUSE**

39. Roanoke Municipal Court is governed by statute(s) found in Alabama Code of 1975, Title 12 Chapter 14. Al Code §12-14-1 authorizes Municipal courts jurisdiction only for violation of municipal ordinances. There is no municipal ordinance involved in the McCarley arrest. Further, and according to Al Code §12-14-6, Jury trial is not authorized for municipal courts. In both respects, Roanoke Municipal Court and each of them (defendants) has grossly exceeded authority granted by the State of Alabama, in their act of making the McCarley arrest.

40. Neither the Judge, nor the Court, nor the city is authorized to make arrests as in the case of the Plaintiff arrest. While police are statutorily and morally obligated to make arrests in cases of violent offenders or others presenting a clear danger to innocent people and property, such cases would and should be prosecuted by a District Attorney in either Alabama District or Circuit Court. Municipal Court is not authorized to be involved in such cases. Therefore the Municipal Court, the Judge, and the City of Roanoke and each defendant violate Alabama law via prosecution of any arrest case.

41. The Judge, Roanoke Municipal Court, and City of Roanoke have abused authority with regard to fines and bonding. Because arrest is not authorized by Alabama Code, then Judge, Court, and City are guilty of abuse of authority by ordering individuals be bonded upon arrest.

42. State of Alabama has written statues that clearly violate the Due Process Clause of the United States Constitution. As indicated in

paragraph 11, Al Code §12-14-6 denies municipal courts empaneling of juries. Then in Al Code §12-14-32, State of Alabama Code has authorized only Judges to make arrests. A dire constitutional conflict is presented by these contradictory statutes. Irregardless of a theory of "Founders Original Intent" or "Strict Construction", this contradiction clearly violates the Due Process clause. The contradiction present in State Statute serves as yet another indicator of conspiracy. If no jury is authorized, then the Judge assumes powers not granted and fully prohibited by the US Constitution, thus in full and complete violation of the US Constitution. State of Alabama has written legislation in violation of US Constitution. Roanoke Municipal Court has utilized statutes in full violation of US Constitution. Municipal Court Judge has violated his schooling, his Oath, and his moral obligation to uphold US Constitution, and City of Roanoke and State of Alabama have encouraged the Judge and Court and Prosecutor Kitchens to violate US Constituion.

43. State of Alabama has further violated the Due Process clause and, continues to violate Al Code by failing to exercise oversight of Municipal Courts; thus aiding and abetting the conspiracy in this case. Al Code §12-14-16 requires Municipaliities to report procedures of municipal courts, and, same are required to report Uniform Crime Statistics. Therefore, State of Alabama has had and continues to have ample opportunity to order City of Roanoke Municipal Court to Cease these unconstitutional and illegal activities. Because State of Alabama has failed in this regard, they continue to violate not only the US Constitution, but also the Alabama Code of 1975.

44. Every arrest executed by Roanoke Municipal Court since the enactment of the Alabama Code of 1975 has been illegal. Every arrest ordered by Roanoke Municipal Court since enactment of the Alabama Code of

1975 has been in full violation of the United States Constituion.    Every
arrest of Roanoke Municipal Court may be deemed a conspiracy to violate
Civil Rights and Constitutional Rights.

**ALLEGATIONS AS TO DENIAL OF CIVIL RIGHTS, CONSPIRACY TO DENY CIVIL RIGHTS
LEADING TO CONSPIRACY**

45.   a)George McCarley gained early political success of statewide
note while politic-ing and leading (1988-1989) the movement to elevate
the level of public outreach, athletic performance, and endowment funding
at his alma mater Jacksonville State University.    The effort was
sufficiently well received that two other universities in state, Troy,
and UAB quickly implemented similar efforts.    McCarley efforts on this
count have never been acknowledged, as success of the three efforts were
considered as a "fly in the ointment" by the Alabama political power
structure -- said power structure failing to understand the holistic
impact on Universities and thus remaining silent.

b) While engaged in the above actiivity, McCarley was asked by JSU
University officials to visit a young Circuit Judge in neighboring Clay
County to determine the Judges fit as a potential member of the JSU Board
of Trustees.    McCarley interviewed Judge John Rochester and recommended
he be considered as Trustee.    This type activity is largely frowned upon
by the Alabama Senate, as University Trustee appointment is coveted by
the Senate as their private domain.    The fact that Judge Rochester today
serves as the Presiding Judge of the Alabama Judicial Inquiry Commission
serves to vindicate McCarley's progressive actions in this instance.

c) McCarley then began to question election irregularities in Randolph
county.    His 1990 letter to Secretary of State Billy Joe Camp, questioned
twelve points of order that appeared missing on election day.    In
response, Secretary Camp advised twelve different state offices had

responsibility; a different officer having responsibility for each of the twelve points questioned. The SOS office provided McCarley a copy of the current state election law code. McCarley served as Poll Watcher in the ensuing election(s) and upon noting many irregularities in the Roanoke voting hall, he notified local media and in the runoff, the small TV station from neighboring LaGrange, Georgia aired a news story featuring McCarley analysis of the problems, from seriously faulty and failure prone mechanical voting machines, to non-code handling of returns to the County Courthouse. Indeed, all the voting machine failures noted on that and subsequent cycles were in favor of the dominant political party.

d) In the general election in November; observation of the votecount at county courthouse revealed a common and non-audited problem capable of changing the outcome of any close election. The requirement that teams of people transpose and summarize the outcome from the mechanical voting machines led to mis-transposed numbers -- while a human error, yet always in the favor of the predominant party. A most significant transposition problem occurred during one of those later vote counts. Chief Justice Perry Hooper was initially declared the loser by a very narrow margin. Then 2000 uncounted absentee ballots were discovered in Talladega county at the very same time McCarley's Randolph audit showed a vote transposition error had cost Justice Hooper nine votes. These findings and subsequent election challenge resulted in Justice Hooper being declared the winner and being inaugurated as Chief Justice of the Alabama Supreme Court. The result of these Poll Watching exercises, along with Plaintiff McCarley's growing political accomplishment and following and the University success clearly embarrassed the opposite power structure, at local, county, and statewide level.

e) McCarley launched his first bid for Mayor of Roanoke in 1992, on a reform, accountability, and industrial development platform, and while losing, he was a factor in unseating the incumbent Mayor Henry Bonner. The lack of results in local industrial recruiting continues to strangle Roanoke and Randolph County, with said industrial development being a natural application of the career results of McCarley.    In simplest common denominator, Roanoke boasted some 2200 industrial jobs in 1910, attested by back issues of the local newspaper.    Today in 2006, that jobs number has constantly erroded to some 700 industrial jobs.

f) Former Mayor Betty Ziglar won the 1992 election and just prior to the 1996 local election, purchased one of the original electronic vote scanners used in Alabama.    In fact, Tuscaloosa County purchased the same system, along with Mobile.    McCarley was asked to review the new scanner and granted his approval.    He duplicated the 1992 campaign and lost again to Betty Ziglar in 1996.    Three additional dire issues became McCarley platform points.    In addition to those mentioned above, the issues of Accountability and of Schools performance demanded new and more dramatic debate, along with continued voting abuses.

  1) Accountability became key on two points.    First, the court must understand Alabama Law requires Municipalities to publish Budgets and Financial pro forma's.    The Ziglar administration never published nor produced such statements, in full violation of state law. Second, it was noted that the previous Mayor had left the city with $300,000 in certificates of deposit and a balanced checking account. This was a notable accomplishment considering annual revenue in the $3 million range.    There was no way to politic this issue but to suggest irregularity by Mayor Ziglar and the City Manager defendant Ellen Farmer and staff.

2)    At this time, State of Alabama began statewide testing of students and the Roanoke results indicated seriously sub-par performance. Mayor Ziglar and supporters were concentrating on an attempt to destroy sound and "paid-off" buildings, demolishing same and building new in the same location. Even when notified of Architects and Engineering firms who could fully renovate existing buildings for one third the new cost, the Ziglar administration proceeded to destroy historic school buildings and saddle taxpayers with a cost three times as high as necessary. When it was decided to build a third campus for Middle School, one former councilman engineered a sale of land to increase his real estate value, while City Attorney (defendant) Oliver Kitchens attempted to sell a parcel of land owned by himself. This type ethics violation was further platform fodder for McCarley and this court may see the resulting negative impact on McCarley via this complaint.

3) Of note was a vote count irregularity. In the small town of Roanoke, with all voting locations within a 15 minute walk of City Hall, amazingly, and given the electronic scan counters at all 5 polling places, one location still required some two hours to be returned to City Hall, thus presenting even more dramatic issues to be used against the city administration in coming campaigns. City Manager Ellen Farmer was the default elections chief.

g)    An issue under seal occurred about 10 weeks following the Roanoke Municipal election of 1996. Plaintiff McCarley was about to be married for the first time, only to have his fiance' "die" under mysterious circumstances. This "death" occurred in Tuscaloosa County. This issue should remain under seal until such time as District Judge and council for both plaintiff and defense may review the issue for possible

24

inclusion in this complaint. We will provide evidence of an ongoing and separate FBI investigation involving Mafia influenced sale of voting machines originating in Birmingham, Alabama (about time of McCarley complaint about localized voting machine deficiencies likely making McCarley a target) (redacted).

h) McCarley made his final Mayor's race in 2000, won again by Mayor Ziglar. Given the Ziglar failure to perform or improve on any of the issues raised by McCarley, a further serious platform issue was presented by the Ziglar administration in the form of creating one of the highest municipal tax structures in the state of Alabama. Citizens now pay 8.5 cents sales tax in the city of Roanoke. Additionally, all possible non-tax fees from garbage disposal to business licensing and Court fees were created and increased in order to provide more money for this administration to spend. Budgets and financial pro forma's had never complied with state law. The negative results of these taxes could be seen immediately in the declining population of merchants in Roanoke.

i) From 1998 through 2001, Plaintiff McCarley gained membership to The Presidential Roundtable, said membership granting access to high level politicians in Washington DC. The attached photo's demonstrates a few contacts. This membership coincided with McCarley being one of a handful of political actives to lead Alabama's 3rd Congressional District to new party dominance, further fueling the conspiracy developing.

j) Building upon his growing political capital, plaintiff McCarley, singlehanded and at personal expense, undertook three highly successful Washington, DC lobbyist efforts;

1) A Missionary and relief journey to Albania in April 1999 exposed McCarley to the many attrocities of the Bosnian war and resulting refugee crisis. Returning to DC, McCarley embarked on a whirlwind

effort on Capitol Hill to insure Representatives and Senators were cognizant of the fullest extent of the situation. McCarley's effort preceeded the return of six US Senators and paved the way for quick provision of humanitarian relief from US sources.

2) Noting the shift away from certain Freedoms granted by the Bill of Rights, McCarley packaged a simple presentation that served to "reframe" the debate on those certain issues to one of "no more new laws until we enforce the present laws."

3) In 2001, McCarley success in DC was noted by a request that he assist a US Army re-authorization effort. The DC political climate was in process of closing one of the most successful Human Rights efforts known to man. The effort has been continuously administered by the US Army, as designed by President John Kennedy and closely monitored by Amnesty International. McCarley efforts on Capitol Hill again, served to reverse votes and successfully continue operation of the school.

This Court should now see the two decade pattern of McCarley building political success by working his away around established power structures. Those power structures intended to act contrary to the accomplishments of McCarley noted above.

**OVERT ACTS OF THE CONSPIRACY**

46. a) Ziglar administrations most notable act was the 1997 implementation of a Nuissance Ordinance that only became a means to harrass McCarley voters and supporters. Defendants, Judge Holliday and City Attorney Kitchens were key to implementation and execution of these harrassment actions. McCarley spoke loudly and often against the method of application of same, including one spot of TV coverage in neighboring LaGrange. This activity continued throughout the Ziglar tenure.

b) Prior Mayor Bonner was appointed to City Utility Commission about 1996. Then in early 1999, McCarley was presented a city "water bill" for one month totaling some $400. This volume of water would prove enough to fill an Olympic size competition pool. He was ordered to pay or be disconnected. In fact, he was disconnected while out of town and remains without municipal water until this day. In questioning the billing, he was told the meters never make a mistake.

c) In the spring of 2000, and only three months prior to the following Mayoral election, the City issued a nuissance violation to the sister of George McCarley. Close inspection of that property demonstrated NO VIOLATION of ordinance. (pictorial evidence) Feeling it not worth the headache, sister intended to simply find out the penalty and pay the fine. When City Clerks informed her she was required to come before a judge and that the fine could be up to $500, McCarley realized all the fuss about the expanded City Court was a real problem. When the sister appeared before the judge only to be "released" without charge - action - or argument, McCarley gained evidence of clear malice exercised against him by many means. Again, Judge Holliday and City Attorney Kitchens were responsible for allowing this action. This instance also provided new platform points dealing with abuse of Prosecutorial and Judicial discretion, plus, helping to prove the fact that City Court serves more for purposes of revenue generation than for justice. In fact, almost all charges prosecuted in City Court are required to physically appear -- therefore allowing the City to earn the rich Court Costs associated. (This District Court should be aware the Ziglar tenure built the city police force up from eight (8) officers, to twentyeight (28), and there has been no increase in city population.)

d) One act of the Ziglar administration of note between 1996 and 2000 was naming of the local National Guard building in honor of a Charles Clack, a local career guardsman. Charles Clack (co-conspirator) will commit an overt act on election day 2000.

e) The 2000 City election cycle commenced quickly thereafter. Alabama has long listed two distinct city election cycles in election code, having qualification dates close together. Roanoke had traditionally followed one date, only to shift to the other qualification date in 2000. While McCarley was in Pennsylvania cramming through to a project completion, he received a phone call from a supporter asking, "why didn't you come and qualify?" Therefore, and knowing that McCarley was out of town, the city switched qualification dates in order to prevent McCarley qualifying for another Mayoral race. This act was the result of actions taken by Mayor Betty Ziglar and City Manager Ellen Farmer.

f) Not to be deterred, McCarley ran a "Write-in" campaign. Then, it was discovered that the optical scanning voting machines purchased by Mayor Ziglar would not accept "write-in" votes, clearly violating the constitution and subsequent voting law. As a final media campaign in the closing days of the cycle, McCarley ran ads informing citizens they should inform the polling workers to collect the manually written McCarley votes for a manual count that night. This was refused by all poll workers. In fact, it was Charles Clack who personally refused to accept the vote cast by George McCarley. The city subsequently refused to count McCarley votes that would've surely led to a run-off. McCarley initiated an election challenge that was defeated by his lack of funds for the expensive appellate effort. Oliver Kitchens represented the City of Roanoke in that complaint. Plaintiff will provide evidence that at one point, defendant Kitchens quoted outdated and fully superceded state

statutes to the Court while making responsive pleadings.   Quite
obviously, the City of Roanoke and all of them (defendants and co-
conspirator's) conspired to violate and did violate the Constitutional
and Civil Rights of George McCarley along with the same rights of all the
citizenry of Roanoke by their overt refusal to count legitimately cast
votes.   The Alabama Attorney General in 2000 was Bill Pryor, and General
Pryor issued an Attorney General opinion that Roanoke was within their
rights not to count all votes.   Considering three distinct opinions of
the Supreme Court of the United States clearly uphold the mandate that
all votes are to be counted, McCarley may have cause to name Appellate
Justice Bill Pryor as co-conspirator.

g) In 2001, a McCarley business project to Madrid, Spain was cut short by
ETA separatist warfare.   Due to obvious trauma of that fourth exposure to
unexpected warfare, McCarley neglected to renew an auto license plate
decal upon his return to the states.   Being ticketed by Roanoke City
Police, he was scheduled for a mandatory visit to night court to learn of
the charges.   In the hours preceding night court, he learned his sister
had been hospitalized in a neighboring town due to surgical
complications.   He called the Clerk Defendant Pat Truitt to report the
problem and request a continuance so that he could care for this family
matter, (obviously of more merit than a license plate violation).
McCarley was informed that the city did not grant continuance and he was
expected to appear or a bench warrant would be issued.   He informed the
clerk he would concern himself with this family medical emergency.

h) A bench warrant was issued by Defendant Sanford Holliday, in violation
of Ala. Code of 1975 and McCarley was swarmed by four (4) police officers
prior to daylight and he was arrested.   (If the court will picture an
individual who has served missionary duty to war zones and made multiple

runs for public office, then picture that same individual being swarmed by (4) police officers for failure to buy a license plate decal, you will understand the charges of Prosecutorial and Judicial abuse of office and abuse of discretion presented by this conspiracy case.)    Stated differently, McCarley act of care during a family medical emergency was deemed an inferior to purchase of a license plate decal.    Clearly and obviously leading to conclusions of official misconduct and conspiracy.

i) An event unfolded in 2004, beginning five months in advance of the qualification deadline for Municipal elections.    Plaintiff McCarley was illegally foreclosed by a foreign bank.    McCarley protested by every means possible in Randolph County Circuit Court.    McCarley complaint in that matter consists of a proving clear bank violations of federal and state consumer protections found in 15 USC 1601 et seq., 12 USC 2501-2520, Uniform Commercial Code, and Alabama Title 15 chapter 19 (mini-code).    McCarley arrived at the initial court hearing only to find the bank being represented by City Attorney and defendant Oliver Kitchens. Throughout the few months of this series of court hearings, McCarley accussed Kitchens of 30 counts of perjury.    At one point, growing closer to city election qualification deadline, Kitchens was granted a continuance of 30 days that had no other intent than to keep McCarley out of the 2004 Mayor's race.    In fact, McCarley refrained from all political actiity since 2004.    Mayor Betty Ziglar and former Mayor Henry Bonner were the only entries in the 2004 mayors race, won by Bonner.

j) On November 30, 2005, plaintiff McCarley lost his oldest and closest friend for life due to the friends untimely and possibly mysterious death.    Of note to this conspiracy allegation is that the friend had met a new girlfriend almost on the ten-year anniversary of the untimely death in Tuscaloosa.    The details of his brief romance almost mirrored the

details of McCarley in the Tuscaloosa case.   The friends death remains under investigation and under seal for this complaint.

k) About two days following the burial of Plaintiff's friend,

1) Plaintiff received a notice from the Alabama department of Revenue demanding payment of back taxes.

2) Of note was the fact notice came in the Christmas season mail rush, therefore denying McCarley the statutory response time mandated by law.

3) It was blatantly clear from the information provided by the agency that at the least a strong oversight had occurred and at worst, someone was playing games with McCarley.

4) Even casual observation of the data presented by the agency leads to the inescapable conclusion that no taxes could possibly be owed. McCarley replied to the agency, informing them of his suspicions and that he would file charges if they persisted.  In fact, they persisted.

5) McCarley relented and supplied the agency a listing of deductions more than ten times the value of the back taxes claimed.  A hearing is obligatory by virtue of Alabama Law.

6) However, the agency has denied McCarley a hearing and the matter is presently before an Administrative Review.

7) The letter denying McCarley a hearing arrived in the short weeks prior to the June 2006 primary.

8) The issues raised by Department of Revenue actions are consistent with the conspiratorial element herein – that being to deny McCarley the time and resources to participate in election cycles and further, to destroy his reputation in a manner deleterious to political and professional activity.  As a direct result, Plaintiff McCarley names the Department of Revenue officials listed as Co-conspirators.

Plaintiff McCarley alleges Department of Revenue officials named, each

and all of them have participated as co-conspirator's against him.

1) On June 9, 2006, McCarley was arrested yet again, leading to this

civil rights and conspiracy charge.  On a frivolous matter not deserving

of police or courts attention, an individual has falsely and frivolously

sworn an arrest warrant.  When the Randolph County sheriff refused, the

individual went instead to Roanoke City Court co-conspirators and was

granted the warrant.  When McCarley attempted to swear a warrant for the

other individual for trespass and vandalism, McCarley was refused.

The most succinct summary of the conspiratorial activity is the

realization that instead of being gracious winners and inviting McCarley

to assist with his proven business and government talents, the overt acts

of this conspiracy indicate both local and statewide political leaders

have engaged in a conspiracy to destroy McCarley.

**FACTUAL ALLEGATIONS— CONSPIRACY TO UNLAWFUL ARREST OR DENTENTION**

47.  Plaintiff was going through an extended problem lasting over

one year with an out-of-town Realtor.  The Realtor had sold a property in

which Plaintiff George McCarley had recorded a perfected Lien.  After

selling the property, although being served the lien, Realtor continued

to attempt to sell the property again.  Roanoke Police officers had

already informed the Realtor he should leave the property alone until the

lawyers and/or courts could settle the issue.  The Realtor ignored

Roanoke police warnings and continued to attempt the sale.  McCarley had

complained to the Corporate headquarters of REMAX regarding this affront.

On the morning of the arrest, McCarley informed Realtor he had been

reported to both the Georgia Real Estate Commission and the Alabama Real

Estate Commission.  Realtor proceeded to Roanoke Police headquarters and

first contacted the Randolph County Sheriff who chose not to take action.

Realtor then went to Roanoke City Hall and swore a warrant, accepted by Roanoke Municipal Court and Clerk Penny Holloway.

48.    At the conclusion of the events described (above) the defendants named in paragraph five(5) caused plaintiff McCarley to be carried in a Police Cruiser to the Roanoke Police Station and Jail located at 100 Chestnut Street, City of Roanoke, State of Alabama, and caused him to be there imprisoned.

49.    On his arrival at the said Roanoke Police Station at or about 12:40pm, plaintiff McCarley was "booked" fingerprinted, mugshot, and placed in a locked and barred jail cell there and was imprisoned.

50.    Throughout the 2 hour imprisonment, plaintiff:

a.    Was never brought before a Judge, Court, or Magistrate; and,
b.    was not informed of his right to an attorney; and,
c.    was not given required warning that any statement he made could be used against him in a court of law; and,
d.    Was not informed of privilege against self incrimination; and
e.    was not informed of any formal charges that were to be placed against him by defendants, or by other person or persons.

Instead, plaintiff McCarley was detained and imprisoned on the orders of the individual defendants, co-conspirators, unindicted co-conspirators, and all of them on the purported justification that a valid warrant had been sworn and issued.  This imprisonment of plaintiff was caused to be committed by the individual defendants, co-conspirator's and all of them.

51.    Throughout some or all of the period of plaintiff's imprisonment (on orders of defendants), the Municipal Court Judge was available for session in the City of Roanoke.

52.    At conclusion of imprisonment, plaintiff was released from custody by defendant after plaintiff posted bond, and bond was posted in spite of illegal charges, warrants, and arrest of plaintiff.

**ALLEGATIONS OF CONSPIRACY TO DENY CIVIL RIGHTS**[6]

53.    Each of the individual defendants and co-conspirator's, separately and in concert, acted outside the scope of his jurisdiction and without authorization of law, and each of the individual defendants and co-conspirator's, separately and in concert defied the moral precepts built into the United States Constitution and the professional licensure precepts of Alabama State Bar; and each of the individual defendants, separately and in concert, acted willfully, knowingly, and purposefully with specific intent to conspire to deprive plaintiff of his right to:

> Obtain arrest warrant for wrongs against plaintiff; and,
> Petition the government for redress of grievances; and,
> Freedom from illegal seizure of his person, papers and effects; and,
> Freedom from unlawful arrest; and,
> Freedom from illegal detention/ and imprisonment; and,
> Release on own recognizance or reasonable bail; and,
> The timely and effective assistance and advice of counsel; and,
> A fair trial; and,
> Vote or run for office; and,
> Participate in or enjoy services of federal or state agencies; and
> Enroll in or attend any school; and,
> Enjoy facilities or establishments in interstate commerce; and,
> Life, Liberty, and the pursuit of happiness; and,
> Due Process of Law, and Trial by Jury.

All of these rights are secured to plaintiff by the provisions of the First Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 United States Code Section 1983 and Section 1985, and by Title 18 United States Code Section 245 (1968).

**ALLEGATIONS AS TO CONSPIRACY DAMAGES**

54.    As a direct and proximate result of the aforesaid acts of conspiracy by the individual defendants and co-conspirator's, and each of them, plaintiff McCarley suffered great bodily pain and injury and mental anguish, from then until now, and he will continue so to suffer in the

---

[6] See PubLaw 90-284, 90th Cong, HR 2516, 82 Stat 73.

future; and he has lost and will in the future lose large sums of money by reason of having been greatly humiliated and held up to public scorn and derision as a result of the foregoing acts of the defendants.

> Damage to 4 generations of reputation in Randolph County; and,
> Damage to personal reputation; and,
> Damage to 30 years of Professional reputation; and,
> Damage to 20 years of Political aspirations; and,
> Loss of property; and,
> Loss of professional job opportunity; and,
> Loss and substantial injury to Professional income; and,
> Slander; and,
> Loss of Freedom.

Complaint Two provides detail of the political accomplishments of Plaintiff.  Such accomplishments, along with an ongoing Corporate Turnaround business boasting 14 successful turnarounds, absolutely demand that such an individual have a publicly searchable record free of the blemish of charges just such as City of Roanoke has now illegally imposed.  Therefore, and owing to the due process denial and civil rights violations imposed on McCarley, defendants have imposed a giant roadblock to the ongoing career of plaintiff.  In this era in which eighty percent of corporate employers openly advise that thorough background checks will be conducted prior to interviews and employment, such actions as imposed by City of Roanoke are a near death sentence.  It is the Due Process denied by City of Roanoke that has created this situation of misery. The true impact on professionals arrested in such frivolous manner can only be likened to the City Roanoke committing felony on plaintiff.

Wherefore, plaintiff demands judgment against the defendants and co-conspirator's and each of them, jointly and severally, in the amount of Five Thousand ($5000) for each year of conspiracy in which a defendant or co-conspirator, and each of them participated, and he further demands punitive damages against the defendants and co-conspirator, and each of

them, jointly and severally, in the amount of Five Thousand Dollars ($5000) for each year of conspiracy.

(a)  For judgment against the City of Roanoke, a municipal corporation of the State of Alabama, for an additional sum in the amount of any judgment that may be rendered against the defendants Henry Bonner (10 year), Sanford Holliday (6 years), Oliver Kitchens (10 years), Ellen Farmer (10 years), Pat Truitt (4 years), and Penny Holloway (4 years) under the second claim of this complaint; plus an additional sum in the amount of any judgment that may be rendered against the co-conspirator's, Betty Ziglar (10 years), Charles Clack (6 years), Carol Knox (1 year), James Griggs(1 year), Sylvester Cannon (1 year), G. Thomas Surtees (1 year), and Cynthia Underwood (1 year), under the second claim of this complaint; in the amount of  Six Hundred Fifty Thousand ($650,000).

(b)  For joint and several judgment against City of Roanoke, a municipal corporation in State of Alabama, and the defendants, Henry Bonner, Sanford Holliday, Ellen Farmer, Pat Truitt, and Penny Holloway in the amount of Four Hundred Forth Thousand ($440,000); and, for joint and several judgment against co-conspirators, Betty Ziglar, Charles Clack, Carol Knox, James Griggs, Sylvester Cannon, G. Thomas Surtees, and Cynthia Underwood, in the amount of, Two Hundred Ten Thousand ($210,000) for a total of Six Hundred Fifty Thousand ($650,000) dollars, net of costs and expenses.

(c)  For judgment against the State of Alabama, for a sum in an amount equal to any judgment that may be rendered against the defendants and co-conspirators; for a total of One Million Three Hundred Thousand ($1,300,000) dollars, net of costs and expenses, plus the cost of this action; and he further demands such other relief as to this Court seems just, proper, and equitable.

55.  On or prior to 30 June, 2006 in the City of Roanoke, State of Alabama, the individual defendants, and co-conspirators, and each of them, in violation of 42 United States Code §1985(2)(equal protection), did conspire and agree between themselves and with other person or persons whose names are presently unknown to plaintiffs, for the purpose of hindering, impeding, obstructing, or defeating the due course of justice in the State of Alabama; and with intent to deny to plaintiff the equal protection of the laws because of his convictions, and to injure plaintiff McCarley for lawfully attempting to obtain his right under the Constitution and laws of the United States to the equal protection of the laws.  Overt acts of conspiracy began in 1996, in City of Roanoke.

56.  In furtherance of the object of said conspiracy, one or more of said defendants did do or cause to be done the acts set forth in paragraphs 29-56 of the second claim in this complaint and, in violation of Title 42 United States Code §1985  (3)(conspiracy to deny rights or privileges), did thereby injure plaintiff McCarley in his person and deprive him of having and exercising his rights and privileges under the Constitution and laws of the United States and the Constitution and laws of the State of Alabama, as set forth in Paragraph(s) 50 to 54 of the second claim in this complaint.

Wherefore plaintiff McCarley claims damages in the first complaint in the amount of two hundred thousand dollars ($200,000) and plaintiff McCarley claims damages in the second complaint in the amount of Two Million Six Hundred thousand dollars ($2,600,000) against the defendants and co-conspirator's, and each of them, jointly and severally, and costs.

G. M CCarley

George McCarley
216B Chestnut Street
2 2 July 2006     Roanoke, Al  36274
Dated    -----------   (Pro Se for Plaintiff)

37

**CERTIFICATE OF SERVICE**

I, George D. McCarleydo swear that on this date, July 22, 2006 as required by Supreme Court Rule 29, I have served the enclosed In Forma Pauperis COMPLAINT on each party to the above proceeding, or that party's counsel, and on every other person required to be served, by depositing envelope containing the above documents in the United States mail properly addressed to each of them and with first class postage prepaid, or by hand delivery to local parties for delivery within 3 calendar day.

**Postal Delivery**

The Clerk
Middle District of Alabama
United States Courthouse
One Church Street, PO Box 711
Montgomery, Al  36101-711
334-954-3600

Alabama Attorney General
  Troy King
  11 South Union
  Montgomery, Al   36130

G. Thomas Surtees, Commissioner
Alabama Department of Revenue
PO Box 327450
Montgomery, Al  36132-7450

For Service to:
G. Thomas Surtees
Cynthia Underwood
Carol Knox
James Grigg
Sylvester Cannon

For Hand Delivery

Mayor Henry Bonner
City of Roanoke
809 Main Street
Roanoke, Al  36274
334-863-4129

For Service to:
Henry Bonner
Sanford Holliday
Oliver Kitchens
Ellen Farmer
Penny Holloway
Pat Truitt
Charles Clack
Betty Ziglar

I declare under penalty of perjury that the foregoing is true and correct

Executed on July 22, 2006.

*G. McCarley*

George D. McCarley

| 1983 DEFENDANT | Years involved | DAMAGES DEMANDED per years of involvment | | State Damages Double City + Individual | |
|---|---|---|---|---|---|
| | | Individual | City | State | Total |
| Henry Bonner | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Sanford Holliday | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Oliver Kitchens | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Ellen Farmer | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Penny Holloway | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Troy King for State of Alabama | | $50,000 | $50,000 | $100,000 | |
| | | | | | |
| 1985 Defendant | | | | | |
| | | | | | |
| Henry Bonner | 10 | $100,000 | $100,000 | $200,000 | $400,000 |
| Sanford Holliday | 6 | $60,000 | $60,000 | $120,000 | $240,000 |
| Oliver Kitchens | 10 | $100,000 | $100,000 | $200,000 | $400,000 |
| Ellen Farmer | 10 | $100,000 | $100,000 | $200,000 | $400,000 |
| Penny Holloway | 4 | $40,000 | $40,000 | $80,000 | $160,000 |
| Pat Truitt | 4 | $40,000 | $40,000 | $80,000 | $160,000 |
| | | $440,000 | $440,000 | $880,000 | |
| Co-conspirators | | | | | |
| | | | | | |
| Betty Ziglar | 10 | $100,000 | $100,000 | $200,000 | $400,000 |
| Charles Clack | 6 | $60,000 | $60,000 | $120,000 | $240,000 |
| Carol Knox | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| James Griggs | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Sylvester Cannon | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Cythia Underwood | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| G. Thomas Surtees | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| | | $210,000 | $210,000 | $420,000 | |
| | | | | | $2,800,000 |

## FOUNDING FATHERS STATEMENTS ON TRIAL BY JURY

From a letter to the Citizens of Quebec (1774) inviting them to join in our revolution, -- unanimously drafted and agreed by the delegates to the Constitutional Convention.  In this brief letter, the delegates listed the four most precious Rights being built into the new Constitution of America.  (Bibliography and letter contained in: Journals of the Continental Congress, Volume 1, pages 105-113) (American Political Writings During the Founding Era, Page 233)

## The first great right enumerated:

In this form, the first grand right is that of the people having a share in their own government by their representatives chosen by themselves,

and, in consequence of their being ruled by laws which they themselves approve, not by edicts of men over whom they have no control.

**The second great right enumerated:**

The next great right is that of **TRIAL BY JURY.**  This provides that neither life, liberty or property can be taken from the possessor until twelve of his unexceptionable countrymen and peers of his vicinage, who from that neighborhood may reasonally be supposed to be acquainted with his character and with the character of the witnesses (plural), upon a fair trial, and full enquiry, face to face in open court, before as many people as choose to attend, shall pass their sentence upon oath against him; . . .

**The third great right enumerated:**

Another right relates merely to the liberty of the person.  If a subject is seized and imprisoned, though by order of government, he may by virtue of this right immediately obtain a writ termed **Habeas Corpus, from a Judge** whose sworn duty it is to grant it, and thereupon procure any illegal restraint to be quickly enquired into and redressed.

**The fourth great right:**

>        Holding Lands upon easy rents and not servitude

**The fifth and final great right quoted to Quebec:**

>        Freedom of the Press

==============================

Letter IV[7]

In this case, it is easy to see that the English have no Constitution because they have given up everything; . . . except in the instance of trial by juries.  (Letter states that Juries serve as a check and balance on abuse of power.)[8]

The author argues what will be required in order to complete the new constitution.

We do not find any bill of rights either accompanying the constitution, or interwoven with it, and no attempt is made to define and secure that protection of the person and property of the members of the state, which the legislature and executive bodies cannot withhold, unless the general word *of confirming the right to trial by jury* should be considered as such definition and security.

---

[7] ibid, page 507  Theophilus Parsons 1778 (Popular Sources of Authority: Documents on the Massachusetts Constitution of 1780, pp324-365)
[8] American Political Writings During the Founding Era == page 385 (published Philadelphia 1776)

# ON THE ADMINISTRATION OF JUSTICE[9]

Let then our justiciary proceedings be uniform and unical.  Trial by Jury is certainly best,

(It is an admirable law which ordains that every man should be tried by a jury of his peers; for when life, liberty, or property are in question, the sentiments which a difference of rank and fortune inspire, should be silent.   Beccaria)

(The sole balance of the faedal times which the people had against the nobility, was the trial by jury:  As it will always prove the best defense on every other occasion.  Blackstone)

Trial by Jury is the bulwark of Gothic liberty.       (Blackstone)

Worcester Magazine, October 1787[10]

The most usual method of trial among the Saxons was by Jury, . . .
Thus amidst all the revolutions which have happened in the empire of Britian, the trial by jury, according to ancient method, has been handed down entire; . . .
The institution was brought into this country by the first settlers, . .
. in the year 1641, they established county courts, and made provision for a trial by jury.  (p 694)

If we would give ourselves time to consider, we would find an idea of natural intellectual equality everywhere predominant but more particularly in free countries.  The trial by jury is a strong proof of this idea in that nation; otherwise would they suffer the unlearned peasants to decide against lawyers and judges?[11]

## SUCCESSFUL DAMAGE ACTIONS IN 42 USC §1983 &§1985,  per 15Am Jur Trials: Table at Police Misconduct

**Illegal Arrest:** Gench v. Moynihan 207 F2d 714 (7th cir, 1953);
Mohler v. Miller 235 F2d 153 (6th cir. 1956)

**Conspiracy to deprive Plaintiff of Liberty:** Hoffman v. Halden 268 F2d 280 (9th cir. 1959)

**False Imprisonment:** Murphy v. West et al. (ED Mich, S. Div #19068, 1959)

**False Arrest:** Rogers v. Biskup and Chicago (ND Ill, E. Div, #60C-457, 1960)

---

[9] ibid, page 591(Published in Charleston SC in 1783)
[10] ibid, page 693-694
[11] ibid, page 798, by Robert Coram, Delaware Gazette, 1791
Bibliography

AMERICAN POLITICAL WRITINGS DURING THE FOUNDING ERA,  1760-1805, Charles Hyneman and Donald Lutz, A Liberty Press Edition, ISBN 0-86597-041-6 (pbk : set)

**Arrest without just cause or provocation:** Hughes v. Noble, 95 F2d 495 (5th Cir, 1961

**Illegal Arrest:** Brazier v. Cherry 293 F2d 401, (5th Cir 1961) cert den 368 US 921, 7 L.Ed2d 136, 82 S. Ct 243

**Illegal detention without probable cause:** Gaston v. Tobriner (DC Dist Col Civil #3994, 1962)

**Illegal Arrest:** Bell v. Hosse 31 F Rules Decision 181 (MD Tenn, 1962)

**Arrest (without warrant) without probable cause, unlawful detention:** Sellico v. Jackson 201 F. Supp475 (SD Cal, 1962)

**Arrest and unlawful detention:** Nesmith v. Alford 318 F2d 110 (5th Cir. 1963)

**False Arrest:** Cedeno et al, v. Lichenstein et al. (ND Ill, 1963 #58-C-1712)

**Arrest and Incarceration pursuant to Bench Warrant:** Johnson v. Crumlish 224 F Supp 22 (Ed Pa. 1963)

**Arrest without probable cause:** McArthur v. Pennington 253 F Supp 420 (Ed Tenn 1963)

**Illegal Detention:** Brooks v. Moss 242 F Supp531 (WD SC, 1965)

**Arrest and conviction under breach of peace statute:** Pierson V. Ray 386 US 547, 18 L Ed 2d 288, 87 S Ct1213 (1967)

**Pursuant to plan, plaintiff illegally arrested on . . .charge, . . . as malicious revenge for criticism of city:** Beauregard v Wingard 230 F. Supp 167 (SD Cal (1964); 362 F 2d 901 (1966)

**False arrest, False Imprisonment, no probable cause:** Rue v Snyder 249 F supp 740 (ED Tenn 1966)

**Arrest without warrant or probable cause:** Attreau v Morris 357 F 2d 871 (7tg cir 1966); cert den 385 US 832, 17 L Ed 2d 67, 87 S Ct 70 (1966)

**OTHER CASES INDICATING DEPRIVATION OF CIVIL RIGHTS**

**Malicious filing of false criminal charges:** Beauregard ibid

**Arrest or detention without probable cause:** McArthur idib

**Failure to bring arrestee before magistrate:** McArthur ibid

**Causing excessive bail to be set:** Gonzalez v General Investigators, Inc., unreported (ND Ill No. 60-C-1806 1960)

**Conspiracy to act in such a way as to deprive plaintiff of civil rights:** Pierson ibid

42

**Claims against Municipality  §28**

**Pendent Jurisdiction:**UMW v Gibbs  (1966) 383 US 715, 16 L. Ed 218, 86 S Ct 1130; Haney v Lexington (1964 Ky App) 386 SW 2d 738, 110 ALR 3d 1362; McArthur ibid

**SELECTING PARTIES DEFENDANT**
In an action to recover damages for police misconduct, each of the persons who committed wrongful acts against the plaintif should be sued.

15 AM JUR TRIALS Police Misconduct and Civil Rights, page 1

**Superior Officer §30**
In an action under the Civil Rights Act (42 USC § 1983)  police officers and city officials can be named as parties defendant even though they had no specific intent to deprive the plaintiff of rights guaranteed under the Federal Constitution

Monroe v Pape (1961)  365 US 167, 5 L Ed 2d 492, 81 S ct 473

**Judges and District Attorney's as parties defendant  § 34**
However, if counsel has a case in which the facts clearly show a conspiracy between a judge and police officer, he may wih, for strategic purposes, to join the judge as a party defendant, this route having been left open by the majority opinion in Pierson. (Justice Douglas questions the concept of judicial immunity)

**City Official §35**
City's failure to take action in face of malpractice may be actionable.

**SOVERIGN IMMUNITY DISPUTED**
In 1957, in the landmark case of <u>Hargrove v. City of Cocoa Beach</u>(1957 Fla) 96 So. 2s 130, 60 ALR 2d 1193, the Florida Supreme Court broadly rejected municipal immunity for the torts of employees performing governmental functions.  The court said:

To continue to endow municipal corporations with soverign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century anachronism.  The decision notes that soverign immunity was created by judges and can be abolished by judges.

43



Senator Strom Thurmond, Senator John Ashcroft, Entertainer Wayne Newton,
Majority Leader Trent Lott, Senator Mitch McConnel, **KNOW LEADERSHIP !**
*Senator Thurmond's 92nd Birthday Gala*



Former Presidential
Candidate and Red Cross President
Elizabeth Dole
**KNOWS LEADERSHIP !**


United Nations Ambassador
Jeane Kirkpatrick
**KNOWS LEADERSHIP !**





Write-In Mayoral Candidate, George McCarley helping to
further education in Roanoke by donating three sets of
"The Harvard Classics" to local school libraries.
Harvard University describes the completed reading of
these books,

*"as equivalent to a college education."*